## Haycraft v. Commonwealth.

(Decided September 27, 1927.)

## Appeal from Grayson Circuit Court.

1. Criminal Law.—In prosecution for murder, where only eye-witness was 6 year old boy, remarks of commonwealth's attorney that on prior occasion witness first pretended to be afraid, but before he got through he talked like he was calling hogs, and cautioning witness to talk loudly, and when witness cried, remark to judge that he had behaved so in grand jury room, and then became composed as judge was, did not constitute reversible error, in view of fact that such witness' testimony was later stricken out because he did not understand nature of oath.

2. Criminal Law.—Judgment in criminal case may only be reversed for error of law, which, on whole record, was substantially prejudicial to substantial rights of defendant.

3. Homicide.—In prosecution for murder, where evidence did not show accidental shooting court's failure to give instruction on accidental shooting did not constitute error.

4. Homicide.—Evidence held to support conviction of voluntary manslaughter.

JAMES T. BASHAM and ALLEN P. CUBBAGE for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Earl Haycraft was indicted in the Grayson circuit court for the murder of Ernest Grant. On the trial of the case he was found guilty of voluntary manslaughter, and his punishment was fixed at 3 years' imprisonment. He appeals.

The shooting occurred on Christmas Day, 1925. Earl Haycraft was reared in Grayson county; his father and mother still lived there, but he was working for the Henry Vogt Company in Louisville, and came down on Christmas Eve to see his father and mother. He stayed all night with his father and went the next morning to see his mother. His father and mother were separated. Ernest Grant was a married man living in the neighborhood. He and Earl Haycraft met at Dave Meredith's house that Christmas Day and after dinner they went together to the house of Ernest Wills, who had married a sister of Earl Haycraft. There Ernest Grant opened a

bottle of whisky which he had, using his knife to take the cork out. They stayed there drinking for some time, and then started to Dave Meredith's, where Earl Haycraft had left his horse.

The proof for the commonwealth showed that when they passed the house of George Nunn, who lived a short distance from Dave Meredith's, they were acting like they were drunk. They were locking arms and just reeling and rocking. They came down the road staggering. Grant staggered up against Nunn's gate. When they had gotten 80 yards beyond the gate, a pistol shot was fired and Grant was found lying on the ground dead, his feet in the edge of the road and his head out near the fence. Soon afterwards Earl Haycraft appeared at Dave Meredith's house and made this statement:

"I killed the damn son of a bitch and sent him to hell where he ought to be, and I had to do it."

Another witness makes this statement:

"I asked him why he did it, and he took me by the hand and cried and said it was because he was a boy and he was a man, and he jumped on him, and he had it to do."

Earl Haycraft was 19 years old and weighed 125 pounds. Grant was 37 years old and weighed 165 pounds. The only eye-witness to the difficulty was a boy 6 years old, whose testimony the court excluded on the ground that he did not understand the nature of an oath.

The defendant testified that after they left the house of Ernest Willis, Grant said he wanted his horse to ride and wanted him to let him have some money to go and buy some more whisky. He told Grant he did not care for any more whisky. Grant said he had helped him drink his whisky and was too stingy. Grant then pulled out his knife, and he backed up on the bank and begged Grant not to do that, telling him he was not able to fight him. Finally, Grant put his knife up and they started on. After they had gone about 300 yards Grant commenced cursing about the whisky, and asked him if he was going to let him have that horse to ride and the money to get some whisky. He told him, "No." Grant then commenced cursing and said he was going to cut his throat. He jerked out his knife and started for him; he ran back-

wards up the road in the fence corner and pulled out his pistol. He thus states what follows:

"Q. Then what happened? A. He grabbed the pistol; he grabbed me with his right hand and grabbed the pistol with his other hand.

"Q. Can you tell the jury who shot that pistol? A. No; I cannot. I don't know whether I did, or whether he did it when he grabbed it.

"Q. Why did you pull out the pistol? A. To protect myself to keep him from cutting me.  . . .

"Q. Had you and Ernest Grant had any trouble before that time? A. No, sir.  . . .

"Q. And you tell the jury you do not know whether you pulled the trigger, or whether it went off in the scuffle? A. I do not know how it went off.

"Q. But you did aim to pull the trigger if it was necessary to protect yourself, did you? A. Yes, sir."

The defendant also showed by several witnesses that what he said when he got to Dave Meredith's house was this:

-     "I killed him and had it to do. I am very sorry for it."

And that this was all that he said. He also proved by his mother that she had written to him to bring her a pistol and testified that he had brought the pistol for his mother and that that was why he had it that day. He introduced a number of witnesses who testified that he was a man of good character for peace and quietness, and that Ernest Grant was fussy and dangerous when drinking.

Two grounds of reversal are relied on: (1) Misconduct of the commonwealth's attorney. (2) The failure of the court to give an instruction on accidental shooting.

The only eyewitness to the homicide was Oval Willis, a boy 6 years old, the son of Earl Haycraft's sister. At one point in the testimony the commonwealth's attorney said: "Why don't you answer?" then added, "When I first talked to him he pretended like he was afraid, but before he got through he talked like he was calling hogs." At another time the commonwealth's attorney said to him: "Just talk like you did in the grand jury room; talk out loud; talk like you were talking to the boys back home." At one point the boy cried so much he could not talk. The commonwealth's attorney said: "Judge, he did

that in the grand jury room, and then was as composed as you are now." Other similar statements were made by the commonwealth's attorney; but at the conclusion of his evidence, it appearing on his cross-examination that he did not understand the nature of an oath, the circuit court excluded from the jury all his testimony on the motion of the defendant. The whole testimony of the witness having been excluded and the jury having been instructed not to regard it and to try the case on the evidence which they heard, it is hard to see how the substantial rights of the defendant were affected by what the commonwealth's attorney said to this boy.

The judgment in a criminal case may only be reversed for an error of law, which, upon the whole record, was substantially prejudicial to the substantial rights of the appellant. When, on appellant's motion, the whole of the testimony of this witness was excluded, no substantial right of his was affected by what the commonwealth's attorney said on the examination of this witness.

2. The only evidence that the shooting was accidental is the defendant's statement that he did not know whether he shot the pistol, or whether Grant did when he grabbed it. He nowhere denies pulling the trigger or intending to shoot Grant, and he expressly says that he aimed to pull the trigger if it was necessary to protect himself. While there is some dispute as to the exact words he used when he reached the house of Dave Meredith, which was only a short distance away, the witnesses all agree that he said: "I killed him, and I had it to do." He did not say anything then about its being an accident or unintentional on his part. Under such circumstances, there being no other proof that the shooting was accidental, an instruction on accidental shooting could not reasonably have had any effect upon the result of the case. The failure to give such an instruction was clearly not prejudicial to the substantial rights of the defendant. The idea that the shooting may have been an accident was an afterthought.

The verdict is reasonable under the evidence. Grant fell and died where he was shot, and if he had a knife in his hand it should have been on the ground by him. Though a number of persons were soon there, none of them, so far as the testimony goes, saw a knife there. If appellant had delivered the pistol to his mother instead of carrying it in his pocket loaded on that Christmas Day

while in a drinking bout with Grant, this unfortunate killing would not have occurred. In fixing the punishment at 3 years' imprisonment, in view of his age and all the circumstances, the jury were moderate.

Judgment affirmed.